www.re-pharmacy.com Very helpful, Bruce, and a very complicated area. Thank you very much. This matter is Pharmacy Benefit. Bruce's Care Marks. www.re-pharmacy.com www.re-pharmacy.com One just factual question. The attempt to compel arbitration was made, what, 10 months or so, 11 months after the case was begun? Is that correct? It was made in June 2004, and the complaint was filed in August 2003. So about 10 months. Why so long? We looked at the, the council looked at the law that was applicable and determined that it would be permissible to file a motion to dismiss prior to filing the motion to compel arbitration, and we thought that the most efficient way to dispose of the case would be to try to file a motion to dismiss in the court. It's a complex antitrust case, and we thought that the court could look at that motion. Once that motion was denied, then we filed the motion to compel arbitration, and we filed that fairly soon after all the briefing on the motion to dismiss was complete. There's no discovery or anything beyond just a motion to dismiss? There has not been any discovery at all. There was a motion to dismiss, there was a motion for reconsideration of the denial of that motion to dismiss, and an answer. There's not even Rule 26A disclosures. The pharmacies who brought this case entered into an agreement with Advanced PCS to, which included an arbitration provision, and that provision provided that any and all controversies arising out of or in connection with this agreement shall be exclusively settled by arbitration. But you would agree we have an obligation to look at the contract first to determine whether or not there is an enforceable arbitration clause in the agreement? The court's obligation is to look at the agreement and determine whether the parties agreed to arbitration and whether the particular claim at issue falls within the scope of arbitration. Okay, so that's a yes? Well, I guess it's a yes and no, Your Honor, because the questions of enforceability here are questions that require interpretation of the contract. Okay, I see what you're saying. So the plaintiff's interpretation of the contract requires the court to take another sentence from the arbitration provision. Okay, it's a qualified yes, I understand what you're saying. Right, okay. Now, here, where we have multiple interpretations of this agreement that are available, the dispute should certainly go to arbitration. And the case that we relied on in that regard is the Pacific Care Health Systems case. That was a U.S. Supreme Court case that is directly on point here. The thing that I guess I was surprised to see initially, whether or not you could arbitrate an antitrust violation, an alleged antitrust violation, Pacifica dealt with RICO, and arguably that's so close that it's tantamount to answering the question here. But isn't there a distinction that can be made between whether or not you can contractually agree to give up your right to enforce as a matter of law, have a court enforce as a matter of law, an antitrust agreement on the one hand versus a RICO violation, not agreement, but violation? I mean, certainly the courts have determined now that an antitrust claim is arbitrable. And so I think what's interesting about the Pacific Care Health Systems case is that the issue was not whether it was a RICO claim or an antitrust claim or another type of claim. The issue in that case was the remedial, there was a provision that limited the remedies. The plaintiffs said we're bringing a RICO claim, really could have been other kinds of claims as well, given the rationale of the case. But the plaintiffs said our arbitration agreement bars punitive damages, and RICO damages are punitive damages, so this provision effectively prevents us from recovering any damages for our claim. The Supreme Court, though, rejected that for reasons that apply squarely here. The Supreme Court looked at that language and said it's ambiguous whether this limitation on remedies has the effect that you, the plaintiffs, say it does or not. And since that is ambiguous, it's a question for the arbitrator. And I'd like to quote the Supreme Court's language here, because it's squarely on point here. Since we do not know how... What part of the opinion are you reading from? I'm sorry, I can get the page for you. It's not a follow-up, but go ahead. Sometimes you'd be shocked to find this out, but sometimes when attorneys read court opinions to us, they drop off a sentence at the beginning or end that could have a very different impact on what is read. It just happens by sloppy reading. I certainly don't intend to do that, and I'll be happy to give you the page site so you can verify it. In logic, that's called the fallacy of vicious abstraction. And I don't know the answer to that at all today. What the Supreme Court said was, since we do not know how the arbitrator will construe the remedial limitations, the questions whether they will render the parties' agreements unenforceable and whether it is for the courts or the arbitrator to decide enforceability in the first instance are unusually abstract. The proper course is to compel arbitration. And that is toward the end of the opinion. I can certainly tell you that, Judge McKee. But those same questions apply here. The plaintiffs say that the limitation on remedies provision, thank you, it's on page 407 of the opinion. The plaintiffs here say that the contract precludes antitrust remedies because of language in the second sentence of the arbitration provision. So the first sentence defines or addresses the scope of arbitrability. The second sentence addresses the role of the arbitrator. Ms. Render, I'm sorry for interrupting you. I think that before getting into those details, do we not have, one, a role in the court to determine certain things as to arbitrability and certain aspects of the arbitrator to decide the question? It's my understanding that the only role of this court is to determine, are we able to say with positive assurance that the provision does not encompass antitrust claims? And if we say we cannot say with positive assurance that the provision does not encompass it, then it's up to the arbitrator to make the decision and interpret the arbitration provision. Is that a fair statement of the allocation of competences between the court and the arbitrator as to the scope of arbitration in this particular clause? Yes, Your Honor. I think that's exactly right. The rule that you just stated comes from the AT&T case, the Supreme Court. This court echoed that in the Prudential Sales Practices Court. And here we have an arbitration provision that is indeed susceptible of an interpretation that would encompass arbitration. And as Your Honor has pointed out, if language is susceptible of an interpretation that would encompass arbitration, the dispute should go to arbitration. Here, there are several ways of interpreting the language that the plaintiffs have pointed to. There's a severability provision, which enables the arbitrator to simply sever the language if the arbitrator finds it unenforceable. We think that the language, the limitation on remedies provision, can also be read to be completely enforceable and still include antitrust remedies. As we said in our brief, we think that the limitation on remedies provision means that the arbitrator can only award remedies provided in the agreement where remedies are provided in the agreement. So, for example, for certain kinds of intellectual property misuse, the arbitrator has remedies that are specifically discussed in the contract, and that's all that can be awarded. But for other kinds of problems, for example, for a simple breach of contract, there's no remedy provided in this agreement. And so it's certainly the kind of thing that you would expect parties to include in an arbitration provision that is as broad as this arbitration provision in and all controversies arising out of that. Because they're arguing, in part, that the nature of this contract and the nature of the bargaining, quote, bargaining, according to them, in quotation marks, parties, is such that if they have to go to arbitration, you win. Your clients win. That the agreement is so one-sided, and that's part of it. But the provision is in there for payment of the arbitrator's award. All those kinds of things mean, the arbitration in Arizona, that if they have to arbitrate, it's tantamount to a judicial decree saying that they lose, and you win, not based upon the merits, but just based upon the unevenly matched parties here. Now, why shouldn't a court look at that? Because to not again say, well, that's something that goes to arbitration. But if they're right, by saying that we've got good arbitration because of the breadth of the arbitration agreement, we're saying that if there is an underwriting antitrust violation here, that it goes without remedy, at least insofar as requiring them to lose the suit that's been brought because they can't win arbitration. Well, this court certainly has held at times that a loser-pays provision may be an issue in enforcing an arbitrarily provision. But not in this kind of a circumstance. Here, we don't have an individual, an employee, someone with relatively limited options. We have a commercial contract between two businesses. Are you saying that the court should look at this? I don't think that this court is in a position to look at this at this point in the proceedings, because the plaintiffs did not put any evidence of their financial wherewithal in the record below. They brought up the loser-pays provision, but as Judge Rubino held, they failed to put in any evidence of their financial capability. And, for example, in this court's decision in Blair v. Specialty Gases, the court made it very clear that you can't just come into court and assert that you can't afford arbitration. You have to demonstrate that. Judge Rubino said they didn't, as he said, they didn't put in income statements or tax returns or any evidence that they couldn't. And so they simply asked Judge Rubino to take it on faith that they could not afford to arbitrate. And as businesses, that's an especially untenable position. The Arizona venue provision has come up for the first time in this appeal. That is not something that we ever heard anything about in the district court proceedings. And those issues are simply waived here on appeal. And there's not anything in the record for this court to even consider. Let me get back to you on this. And I'd like you to synthesize the answer to this. I'm not sure that I understand your answer to it. Here, Judge Fulham said the arbitrator is precluded from considering the antitrust claims asserted by plaintiffs in this litigation. His theory was that under the language of the arbitration agreement considered as a whole, that that only dealt with sales and services between the parties. Now, how do you, in the judge making that decision, he's saying it's a matter of law, interpreting the agreement that there would be no arbitration. How do you respond to that? I think it goes back to the rule that you, Your Honor, quoted earlier. That is one interpretation of the agreement. But there are other interpretations of this agreement that are also available. And the other interpretations that are available would require arbitration. So because this language is susceptible of an interpretation requiring arbitration, I'm sorry, I don't want to talk over you, Your Honor. I understand that you're relying on those other cases that say that arising out of the agreement and antitrust law does arise out of the agreement. That has to be your position.  Again, it isn't a decision of a court to determine the final word on scope. But whether as a matter of law, we would have to decide that it cannot be interpreted as authorizing or precluding arbitration. I think that's right, Your Honor. And Judge Rubino certainly took a look at the scope of arbitrability and found that the antitrust claim was within the scope of arbitrability. And it's also worth noting, although my time has run out here, that that is not an issue that ever came up until Judge Fulham brought it up in his opinion. The plaintiffs did not argue about the scope of arbitrability and whether the antitrust claim was encompassed until after Judge Fulham made that decision. Thank you, Your Honor. Did you save time for rebuttal? I did save some time for rebuttal. Thank you. Good afternoon, Your Honor. Good afternoon, Your Honor. Letty Montague on behalf of the Appellees. How are you? Maybe you can help me understand what happened here. I have a case that seems to be receding. There's an order from Judge Rubino to go to arbitration based upon the breadth of what appears to be a very broad and all-inclusive arbitration agreement, the kind we see often, although we don't usually see it in the context of an antitrust dispute, but we see them a lot. And then it goes to another judge pursuant to the multidistrict transfer. That judge looks at the first order and says, that first order is perfectly fine, but I'm going to overrule it. I don't get that. You may need to address law of the case here because, Judge Rubino, I mean, just to sum up, it's very simple what Judge Rubino found. It's almost in a sentence. That there is a valid agreement to arbitrate, that's number one. That the instant dispute falls within the scope of the arbitration agreement, number two. That there has been no waiver, number three, no waiver of arbitration. That the plaintiffs have not met the burden of establishing that the arbitration costs, including the provision of fee shifting of attorney's fees, renders the arbitral form prohibitively expensive. That's four. And that the arbitration agreement is not unconscionable. That's five. That's law of the case. How do you get around that? Well, number one, Your Honor, that is an interlocutory order. Whoa, whoa, whoa. Because what he did was he ordered arbitration. And under the Arbitration Act, Section 16, it says an ordering compelling arbitration is an interlocutory order. The Arbitration Act itself says that. But how do you have another judge come in, in the middle of the case, and say that at least three of those five things are wrong? Okay. May I put it in the context, I think, of how Judge Fulham got this matter? Before we get there, isn't this law of the case from Judge Rubino's decision? No, Your Honor. It is not. You need to tell me how. I thought you were going to say, yes, it is, but. Well, I guess that's a better answer. That would be a better answer. But here's what happened. The plaintiffs made a motion before Judge Rubino to dismiss, to lift the stay and dismiss the case so we could appeal his order. The panel, over the objection of the appellant, then transferred the case that Judge Rubino had to Judge Fulham. Judge Rubino declined to rule on the motion that we had filed to lift the stay and dismiss and transferred it to Judge Fulham. Judge Fulham said, I have the authority to rule on that motion to dismiss, to lift the stay and dismiss, just like I have to enter any other order to terminate a case. And he said, but as I look at that case, I'm not sure that what the plaintiffs are doing is the best course of conduct. Understood, but let's go back. The definition of law of the case is, once an issue is decided, it will not be relitigated in the same case except in unusual circumstances. You have to tell us somehow that this is unusual. Because you can't say the issue wasn't decided in this case. Well, it is unusual in this sense, Your Honor, in that the case was transferred to Judge Fulham. That happens all the time. He said, I'm going to change the MDL case where he was charged with running the case as efficiently as possible. And with that in mind, he said, not that that's the reason I'm going to change the decision, he said, but that gives me the right to look at what happened. He may have said that, but where is it coming from? Once it's law of the case, there's four exceptions. There's a timely motion for reconsideration. That's not applicable before Judge Fulham. New evidence, that's not applicable. Governing law changes, that's not applicable. The only thing you can say, then, was Judge Robreno's decision, in this case three decisions, clearly erroneous. That's the only way you can go off on it. And Judge Fulham felt that it was. No, he did not. He specifically said that the order from Judge Robreno, I think he said, was clearly appropriate. Let me jump in, Mr. Montague, and see if I can help you out. I think if there's any authority of Judge Fulham's action that comes from the statute on the JPML, it said the transferee judge may vacate or modify any order of a transferor court, including protective orders, unless altered. However, the transferor's courts remain in effect. Then further, it says, the judge to whom the cases are transferred, the transferee judge, quote, may exercise the powers of a district judge in any district for the purpose of conducting pretrial depositions, such coordinator consolidated pretrial. So the question is, given the legal precept governing law of the court, does this one statement that the judge may vacate or modify any order, can a judge do that without assigning reasons? Well, again, Judge Fulham is known for his terse decisions, so I can't ask for that, but I answer for that. Why don't you augment reasons that he could have used if there are reasons exist from departing from the law of the case? Okay. Well, first of all, I think he looked at things that Judge Rubino did not look at. In other words, when we filed a motion for reconsideration before Judge Rubino, there was some additional affidavits presented to him, which Judge Rubino refused to look at, because he said they could have been filed earlier. And I think Judge Fulham must have looked at that full record. Well, number two, Judge Rubino said that there was no, that you couldn't rely on the pleadings in the case to determine unconscionability and unequal bargaining power. And he totally overlooked both some admissions that were in the complaint and also the 10K that was submitted by the opponent. When I first got this case, I felt that there was something into the transfer combining five cases. But upon examination, this particular case stands alone, and it does not involve the same issues or the same parties as the other four cases transferred to Judge Fulham. That's partially correct, Your Honor. It does not involve the same parties, but it does involve almost the identical issues. In fact, in the argument... What issues are you talking about? I'm talking about whether or not the agreements between the particular pharmacy benefit manager and the planned sponsors constitute an unlawful conspiracy in restrictive trade. The facts are almost identical for all of the pharmacy benefit managers. In fact... Do those cases involve the precise and difficult issue before us concerning assignment to arbitration of Illinois? No, no other party has raised the arbitration issue, and those cases are being litigated. So as far as this particular case alone is concerned on the arbitration aspect, it stands alone? That's correct, Your Honor. Let me focus in on that. I'm sorry, are you done, Judge Fulham? Yes. Let me focus in on that, just to give us a bit from the law of the case. If we were to get this case just on a straight-out appeal, from a refusal to order arbitration without the law of the case overlay, and we were just trying to decide whether or not, under this agreement, given the allegations that you've made about unequal bargaining power and an unconscionable contract and contract of adhesion, why wouldn't this be the case, especially given the Pacifica case that Ms. Render quite appropriately brought to our attention, why wouldn't this be the kind of case that we would say, go to arbitration and all of the issues that you're raising there are for the arbitrator to decide, given one, the breadth of the arbitration clause, and two, the severability clause. Without that, it seems to me a much better argument. Without the severability clause in there, it even seems to pretty substantially undermine your argument about the remedies, because if the arbitrator finds that the limitation of remedies is something that is inappropriate in this context, then the arbitrator doesn't enforce that. Well, number one, we didn't raise the limitation of remedies below before Judge Rubino. We just raised it in a little different context than the scope. But why does Pacificare say you're wrong about that, the limitation of remedies? Pacificare was, as your Honor pointed out, was a RICO case, and in the discussions of treble damages in antitrust cases, they called it a remedial provision of the statute. In the recent case of, I believe your Honor was on the panel, that came down after all the briefs, the Gay case, there is a citation to the language in the Gilmer case that the party should be held to the arbitration clause unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue. And Congress hasn't done that here. What case would say that Congress has done that? Now, there is a case, your Honor, and I apologize that it was not cited, but it is a First Circuit case called Christian, K-R-I-S-T-I-A-N, versus Comcast Corporation, 446F325. It came down in April of 2006. And in that case on pages 47 and 48, it actually has a very careful analysis of why, where the antitrust statute says that a private antitrust plaintiff quote, shall recover threefold the damages by him sustained. It holds that Congress' use of the word shall makes the treble damages remedy a mandatory result if a plaintiff successfully sues an antitrust violator. This language directly conflicts with the language of the first paragraph of the damages provision, which is somewhat similar. Well, but if you're right about that, and I assume that Ms. Render will want to do a 28-year response to that. And I apologize that this was not included in the brief. It happens. But if you're right about that, then why doesn't the severability clause pull that argument right off of under you? Well, then you have to look at the other aspects too, and that's the unconscionability part. This loser pays, which is a chilling... Well, I don't understand that argument because that works both ways. Well, I mean, if they lose, they pay. If you lose, you pay. But the statute provides that if they lose, they pay. They didn't give us anything on that. I'm sorry, say that again? The antitrust law provides that the defendant pays costs and fees to the plaintiff if the plaintiff prevails. It doesn't provide the other way around. I thought you were talking about the cost of the arbitrator. The loser pays that. The cost of the arbitrator is something else. But the cost, the fact that that's... I guarantee you there'd be very few small plaintiffs bringing antitrust cases, either class actions or otherwise, if they had to face the risk of paying not only their own costs, which in an antitrust case with experts and discovery and so forth, they're enormous. But looking at what the Supreme Court has done in connection, and I found it somewhat surprising, but they've done it, is Mitsubishi Motors in 1985, they held that antitrust claims arising from international transactions are arbitrable. In Gilmer in 1991, they cited Mitsubishi for the proposition that, quote, in recent years, it, the court has held, enforceable arbitration agreements relating to claims arising under the Sherman Act. So clearly, at least at this point, antitrust claims are arbitrable, are they not? Oh, yes, there's no question about that. And this isn't arbitrable because... Because there's a whole line of cases which say where the statutory right is eviscerated, and the plaintiff cannot effectively vindicate his statutory rights under the arbitration clause, then that clause, then it's not enforceable. Do those cases have severance clauses in the arbitration agreement? I beg your pardon? Do those cases you're referring to have severance clauses in the arbitration clauses, severability provisions? Yes, they do. And, in fact, even the case that I cited has a provision, the Comcast case held that it could be severed. Now, that's different, though. Saying that it can be severed is different from... No, in that case, I don't want to mislead... No, in that case, they did sever. I'm sorry, I think I... In that particular case, they did sever. Okay, but saying that they did sever or that they could sever is not the same as saying that the contract itself allows for the severability. That's different. In that case, there was this... But, well, in the Alexander case and the Perella case, there were severability clauses, and that was ignored by... I mean, that was overruled by the court, and they said where the intent of the contract, the language of the arbitration clause, is to make it so unfair and one-sided that the court is not going to sever, and the arbitration clause is unenforceable. Here, I don't think there's any question about how one-sided this particular clause is, making these single pharmacies go out to Scottsdale, Arizona, to arbitrate. If it were a slip-and-fall one-day case is one thing, but we have an antitrust case that could take weeks or months. All right, well, Perilla did allow for that if that kind of agreement provision is in this agreement. Under Perilla, we said, again, you can sever that. It's still an arbitratable, arbitrable agreement, a good arbitration, and if there's anything within that that is so unconscionable as to tip the scales and be unfair, then you sever that. You're arguing the whole contract here is a contract of adhesion, but you're pointing to specific elements of it. No, the arbitration clause is a contract of adhesion. Not the whole contract. Back up a second. Time, time, time, time. Are you saying that the contract is a contract of adhesion or that the arbitration clause is a what? It can't be a contract by itself of adhesion. A provision of adhesion. The contract is not a contract of adhesion? Yeah, it is. The whole contract is. You said it wasn't. I'm sorry. But we're only looking at the clause of the unfairness of the arbitration clause. And the arbitration clause, by its provision, which says the arbitrator may only award remedies that are provided in the agreement. There are no remedies provided in the agreement. Well, it says the arbitrator must follow the rule of law and they only award remedies provided in this agreement, and then there's the severability clause that works. But that's a limiting clause. Otherwise, it wouldn't be in here. It has to have the meaning of limiting. Otherwise, why would they even put it in? It doesn't make any sense. Well, I'm sure Ms. Render will argue what that means is that the only remedies that can be provided are the remedies provided in the agreement, but to the extent that those remedies violate the rule of law, the severable and the arbitrator doesn't have to be limited to that. And if that's the case, then it seems to me a lot of what you're arguing is undermined. Because, again, the severability clause puts this in a different light. Intentionally, I'm not sure how strong your argument would be even absent of severability clause. But with the severability clause, it seems to mitigate some of the concerns that would otherwise arise from the fact that we're eliminating the possibility of trouble damages under an antitrust suit. To the extent that the fact that that argument has traction, it seems to me it has a lot of traction, it's made a lot slipperier because of the severance clause. And that's just my opinion. I can be wrong about that. I don't think anybody agrees with me. I apologize if my time is up here, but I don't think the severance clause... Before you leave, I'm trying to just synthesize the gut issue that we as an appellate court have to decide. Given that our role is simply to decide whether as a matter of law this cannot be arbitrated, if we do not reach that, then it's up to the arbitrator to decide whether under this clause antitrust comes within it. Now, that being so, given the previous decision that this was arbitrable, given by another judge, and given the reasons as such stated by the district court, how can we decide, how can we rule that as a matter of law this cannot be arbitrated? Well, that's a long question. Judge Fulham found... And we have to do that. We have to do that in order for you to win this appeal, do we not? Yes, but it's not only the scope. This court can rule on whether the statutory rights can be effectively vindicated and whether or not the contract is unconscionable. You're talking about scope there, and that's... Are you not? There are three things that are really before the... Well, there are really four things before the court. There's the scope, the unconscionability, the inability to vindicate the statutory rights and the waiver issue, which Judge Fulham never reached. But that will be an issue that, if it's dismissed, will come up on appeal. And, Your Honor, to answer just quickly your question, first question out of the box is the plaintiffs were never advised at any time that the defendant was going to move for arbitration after it litigated the motion to dismiss and the motion for reconsideration on the motion to dismiss, which were very heavily briefed and argued motions. Okay. Thank you. Thank you very much. Do you have something else, Your Honor? No, I have nothing. Okay, thank you, Mr. Montague. Thank you. Ms. Render? Your Honors, I think the discussion of the law of the case and of the effect of the Section 1407 transfer here all has made... I think the panel has articulated the law with respect to those, and I don't really have anything else to add here today. One question. Yes. I think you've attempted to answer in the recovery from page 5. There is the provision in the Manual for Complex Litigation that the transferee judge may vacate or modify any order of a transferee court. Or is that actually in 1407? It looks like it's the manual. It's in the manual. The Manual for Complex Litigation certainly does say, and cases say, that a district court has the power to vacate a prior order. And that would be true in the case of a transfer or in the case of no transfer at all. A district court judge has that power. But having the power to do that is different from the wisdom of doing that. Just because the court has the power to change a prior order doesn't mean that the court should do so.